RAMONA MEDINA CARDONA ET AL., Plaintiffs and Appellants, *v.* DR. JUAN A. PONS, ETC. ET AL., Defendants and Appellees.

No. 11589. Resubmitted December 11, 1957.—Decided February 17, 1959.

Gaspar Gerena Brás for appellants. Hiram Cancio, Secretary of Justice (José Trías Monge, former Secretary of Justice on the brief) and M. Rodríguez Alberty, Assistant Attorney General, for appellees.

MR. JUSTICE SERRANO GEYLS delivered the opinion of the Court.

On April 6, 1954, Ramona Medina Cardona requested the Registrar of Vital Statistics of Mayagüez to enter the delayed registration of the birth of her natural son Juan Ramón Medina. She submitted two affidavits in support of her petition, one signed by her and another by her son. Six days later the registrar denied the registration because the petition was not accompanied "by a document establishing the place and date of birth of the person to be registered." A few months later the applicant and her son brought a "civil action" before the Superior Court, San Juan Part, against the Secretary of Health and the Registrar of Vital Statistics, urging that they be ordered to record the birth of Juan Ramón Medina in the Registry of Vital Statistics "as the acknowledged natural son of Ramona Medina Cardona, born in Mayagüez, Puerto Rico, on February 27, 1923." It was alleged in the complaint that Ramona Medina Cardona had a love affair in Mayagüez from 1921 to 1923 with

Zacarías de León, born in the Dominican Republic, from which a son was born named Juan Ramón, without having been registered in the civil registry nor baptized in any church whatsoever; that a year later the father took him to the Dominican Republic, giving as an excuse that he wished "his family to meet him," and he never returned; that plaintiff never heard from her son until the latter had attained his majority and after the father had died; that her son is known in the Dominican Republic by the name of Juan Ramón de León Medina, but that he was not registered there in any registry whatsoever; and that plaintiffs do not have the documents required by the defendants. The latter objected on the basis that plaintiffs had to submit the documents which they had been required to present and that the delayed registration sought could not be ordered by the court.

At the hearing only plaintiffs' evidence was presented. Ramona Medina Cardona recited the facts alleged in the complaint elaborating on the circumstances of childbirth, the departure of father and child to the Dominican Republic, and how she subsequently found out of her son's existence. She further stated that she was interested in taking her son and the latter's wife and children to live in New York, where she owns some property and business. The midwife Cecilia González testified that in the year 1923 she had assisted Ramona Medina at childbirth, that the latter had given birth to a boy who was named Juan Ramón, son of an individual who was called "the Dominican," and that months later she learned through the mother herself that the son had not been registered in the civil registry and that the father had taken him away from Puerto Rico. Witnesses Juan Ramírez, Barbarita Rivas, and Santa Toledo testified that they knew Ramona Medina and Zacarías de León, that both had lived together and had begotten a son named Juan Ramón, that the father had taken him away a few months after his birth and that the mother had continually searched for him thereafter.

Plaintiffs also offered the following documentary evidence: negative certificates from the Registry of Mayagüez and from Santiago, Dominican Republic, showing that there is no birth record of Juan Ramón Medina, known as Juan Ramón de León Medina; a letter from the Registrar of Mayagüez denying the registration of said person; affidavit of Ramona Medina acknowledging her son Juan Ramón and stating the facts of birth and his non-registration; other affidavits signed by her establishing the same facts, but using the forms of the Department of Health; affidavit of Juan Ramón Medina accepting his mother's acknowledgment; and lastly, a certificate from the parish priest of the Altagracia Parish of the Dominican Republic showing that Juan Ramón Medina, natural son of Ramona Medina, had been baptized on May 8, 1954. This act, as may be noted, took place approximately one month after the Registrar of Mayagüez had denied the delayed registration of the birth of Juan Ramón Medina.

The Superior Court then entered judgment declaring that defendants had not acted capriciously and arbitrarily in denying the registration and that upon plaintiffs' failure to offer to the Registry of Vital Statistics the documentary evidence required by Act No. 37 of November 21, 1941 (Spec. Sess. Laws, p. 132) and Circular No. 3 of the Department of Health of March 15, 1944, the registration did not lie. Consequently, the complaint was dismissed.

Plaintiffs appeal[1] and assign three errors which on close examination may be reduced to one. They maintain that the trial judge instead of deciding whether defendants had complied with the provisions of law in denying the registration, should have weighed the evidence presented to him and determined whether it was sufficient to conclude that Juan Ramón Medina was born in Puerto Rico on the date and in the

---

[1] In view of the provisions of paragraph (d) of § 14 of the Judiciary Act, as amended by Act No. 115 of June 26, 1958 (Sess. Laws, p. 279), we shall consider this appeal as a certiorari.

place alleged. Consequently, we must determine the scope of judicial review, if any, in the proceeding for delayed birth registration.

 Sections 38 and 42 of Act No. 24 of April 22, 1931 (Sess. Laws, p. 228; 24 L.P.R.A. §§ 1237 and 1301), authorize the Secretary of Health and his subordinates, the keepers of vital statistics registers, to enter the declarations of birth presented to the registries after the ten days fixed by § 17 of said Act as the regular term.[2] In such cases of delayed registrations (§ 38), it is incumbent on the applicant to present the certificate to the keeper of the register "... in a form as complete as possible according to the time

---

[2] In its pertinent parts said sections state as follows:

Section 38.—"If at any time after the birth of a person a certified copy of the record of said birth should be required for any purpose, and if after the Commissioner of Health [today Secretary of Health] or his representatives having searched in the files, it appears that said birth was never registered in accordance with the provisions of this Act, the Commissioner of Health [today Secretary of Health] shall then immediately require the person responsible for making said declaration and for presenting the certificate for its registration, to present said certificate to the Keeper of the Register of the corresponding district in a form as complete as possible according to the time which may have elapsed since said birth occurred. There shall be filed with said certificate all such affidavits and other documents as the Commissioner of Health [today Secretary of Health] shall deem necessary, and the person responsible for said fault shall be prosecuted, as required by this Act, if he refuses to present said certificate promptly. In case the person responsible for the presentation of the certificate has died or cannot be found, the person asking for the certified copy of the record may present said birth certificate together with such affidavits or other documents as may be required by the Commissioner of Health [today Secretary of Health], all of which shall be filed in the Department and a certified copy of the certificate shall then be issued to the applicant, upon payment of the fees hereinbefore mentioned."

Section 42.— "... Provided ... when any person responsible for noncompliance with the provisions of section 17 of this Act appears before the Keeper of the Register for the purpose of registering a birth at any time after the ten days prescribed by law for the registration of births, said registration may be effected without further sanction upon the cancellation of a one-dollar internal-revenue stamp. Otherwise, every person failing to comply with the provisions of this Act relative to registration of births, shall be prosecuted in accordance with the provisions herein contained, and, upon conviction, the above cited penal sanctions shall be imposed upon him."

which may have elapsed since [the] birth occurred. There shall be filed with said certificate all such affidavits and * other documents as the Commissioner of Health [today Secretary of Health] shall deem necessary. . . ."

As may be observed, in that section the Act designates the officials who must decide whether a delayed registration should be entered, but it contains no provision for a hearing in that connection nor a method by which the courts can review the administrative actions. The insufficiency of these legislative enactments acquires more significance when contrasted with the provisions relating to the delayed registrations of marriages and deaths contained in the same § 38 of the Act. In the latter two cases, when the marriage or death does not appear registered, the interested party shall resort to the Superior Court requesting an order directing the registration. The court, after weighing the evidence, with the assistance of the prosecuting attorney, shall issue the proper order and a copy thereof shall be sent to the Commissioner of Health [today Secretary of Health] for registration purposes.[3] The administrative officials are responsible in these cases for making the initial search in their files in order to determine whether the marriage or death is registered and thereafter for making the registration if so ordered by the court. At no time do they have discretion, as in the cases of birth, to weigh the evidence and determine whether or not registration lies.

We have carefully examined the legislative history of these provisions as well as the statements of the administra-

---

* The Spanish text of this provision uses the alternative conjunction "*u*" (or). The whole phrase reads "*declaraciones juradas u otros documentos*," literally translated "affidavits *or* other documents."

[3] Section 31 of the Act (24 L.P.R.A. § 1231) provides a similar procedure for the cases of addition to or amendment or rectification of certificates and for the cases of change or modification of, or addition to, names or surnames. In addition to the cases of delayed registration of marriages and deaths, these two are the only other instances for which the Act expressly establishes a judicial procedure.

tors in that respect and we have been unable to find any explanation for these differences. We assume that the greater number of births, the more frequent occasions for requiring certificates of this nature, and the probabilities that the failure to record births occurs more often than in deaths and marriages, led the Legislature to create an administrative procedure that would primarily take charge of the bulk of these controversies, thereby avoiding the undue burdening of the courts.[4] Whether or not these are the reasons, it is certain that in the light of the obvious differences between these procedures, established by the Act, we must decide that in our jurisdiction one cannot resort in the first instance to the regular courts to request an order or decree to record a delayed birth certificate.

Does the foregoing mean that the administrative determinations in these cases are conclusive? We believe not. The Act does not specifically provide such a thing, nor expressly precludes judicial review—*López* v. *Muñoz, Governor*, 80 P.R.R. 4, 7–9 (1957)—and neither do we find therein any indication whatsoever that such was the legislative intent. Besides, the duty of verifying the circumstances of a birth is not one which, by its nature, should be presumed to remain under the exclusive power of the administrators, *López* v. *Muñoz, Governor, supra* at 8, and authorities cited therein; Davis, Administrative Law 812–867 (1951), but on the contrary, one that is common in the realm of judicial work.

Once it is established that judicial review exists in this type of controversies, we must define its scope. In the above-cited *López* case, after a careful study of the problem,

---

[4] The annual reports of the Secretary of Health, corresponding to the years 1949–50 to 1955–56, show that the annual number of births is greater than the combined total of marriages and deaths, and in some instances several times greater. An identical situation prevails concerning the certificates issued by the Department.

we decided (at p. 12) that "—in the absence of statutory provisions for (a) an administrative hearing and decision and (b) a limited judicial review of the latter— [the claim] must perforce follow the regular course of an ordinary action where the trial court independently hears the evidence and makes its own findings of fact and conclusions of law." In reaffirming here such general principle we must make an exception of the very special case where, because of the existence of such factors as the plan, purpose or history of the Act or of some of its specific provisions as well as the technical or specialized nature of the administrative function and consequently, the remarkable competence of the administrators to exercise such function, the due protection of claimants' rights through suitable administrative proceedings, and any others, we might be convinced, even in the absence of the factors mentioned in the *López* case, that it was the purpose of the Act to limit judicial review to questions of law and of substantial evidence contained in the record of the proceedings before the administrative agency or official; *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361 (1952); Jaffe, *Judicial Review: Question of Fact*, 69 Harv. L. Rev. 1020, 1045–1056; *Judicial Review of Administrative Adjudicatory Action Taken Without a Hearing*, 70 Harv. L. Rev. 698, 699–704 (1957); Davis, *op. cit.* at 821–850. The general principle, however, squarely applies to the case at bar for not a single factor exists indicating a limited review.[5]

---

[5] We believe, as we said in *López* v. *Muñoz, Governor, supra* at 13, that the more desirable step in these cases would be for the Legislative Assembly, according to the applicable constitutional provisions, to expressly establish a formula for judicial review. The judicial product is always sporadic and incomplete. Valuable legislative models are found in the Louisiana legislation (40 West's Louisiana Statutes Annotated, § 331, 1957 Cumulative Annual Pocket Part at 12); California (40 West's Annotated California Codes, §§ 10500–10558, 1958 Cumulative Pocket Part at pp. 26–30), and New Jersey (26 New Jersey Statutes Annotated, §§ 26.8–38, 1957 Cumulative Annual Pocket Part at 107–108).

■■ However, the former considerations do not completely decide the controversy before us. We must determine whether the trial judge is correct in his conclusion that the defendants, in denying the registration, did not act capriciously or arbitrarily but in compliance with the applicable law and regulations. Such conclusion requires an analysis of the local legislation concerning delayed birth registrations.

Act No. 61 of March 9, 1911 (Sess. Laws, p. 187) established a new civil registry system following our change of sovereignty. Title II thereof regulated the births and § 12 fixed a period of forty days from the date of the birth within which the responsible persons had to make declaration thereof. There was no provision whatsoever to cover the cases of delayed registration. The following year the Legislative Assembly corrected that situation in Act No. 46 of March 7, 1912 (Sess. Laws, p. 85). It increased the declaration period to sixty days (§ 12) and ordered the registration of declarations made after the expiration of that term, but imposed a fine on the person at fault.

The foregoing legislation remained effective until 1931, when the afore-cited Act No. 24 entered into effect, making a complete reorganization of the civil registry system. In § 17 it reduced to ten days the period for declaring births and § 42 imposed a penalty on those who failed to present on time a birth certificate for registration. Said section also added:

"...*Provided*, That during the term of one year counting from the date on which this Act takes effect, the births of all such persons more than ten days old as were not previously registered, can be registered without the said penal sanction and without liability on the part of the person declaring said birth or on the part of the person responsible for said failure. The Commissioner of Health [today Secretary of Health] is hereby charged with giving due publicity to this provision, through the press or by any other means which he may deem proper, for

general information; *Provided, however,* That upon the expiration of said term, when any person responsible for non-compliance with the provisions of section 17 of this Act appears before the Keeper of the Register for the purpose of registering a birth at any time after the ten days prescribed by law for the registration of births, said registration may be effected without further sanction upon the cancellation of a one-dollar internal-revenue stamp. Otherwise, every person failing to comply with the provisions of this Act relative to registration of births, shall be prosecuted in accordance with the provisions herein contained, and, upon conviction, the above cited penal sanctions shall be imposed upon him."

This was not, however, the only provision concerning delayed registrations. Section 38 added:

"If at any time after the birth of a person a certified copy of the record of said birth should be required for any purpose, and if after the Commissioner of Health [today Secretary of Health] or his representatives having searched in the files, it appears that said birth was never registered in accordance with the provisions of this Act, the Commissioner of Health [today Secretary of Health] shall then immediately require the person responsible for making said declaration and for presenting the certificate for its registration, to present said certificate to the Keeper of the Register of the corresponding district in a form as complete as possible according to the time which may have elapsed since said birth occurred. There shall be filed with said certificate all such affidavits and other documents as the Commissioner of Health [today Secretary of Health] shall deem necessary, and the person responsible for said fault shall be prosecuted, as required by this Act, if he refuses to present said certificate promptly. In case the person responsible for the presentation of the certificate has died or cannot be found, the person asking for the certified copy of the record may present said birth certificate together with such affidavits or other documents as may be required by the Commissioner of Health [today Secretary of Health], all of which shall be filed in the Department and a certified copy of the certificate shall then be issued to the applicant, upon payment of the fees hereinbefore mentioned."

There were no changes in the legal provisions [6] until 1941, when § 20 of said Act of 1931 was amended to provide as follows:

"Section 20.—As regards newly-born children of illegitimate origin, it shall not be stated in the register who is the father, unless the father himself makes the declaration of birth and of his paternity. The same procedure shall be observed as regards the statement of the mother's name when the declaration of birth is made by the father alone.

"When the person responsible for the non-compliance with the provisions of Section 17 hereof appears before the person in charge of the registry in the district where the birth took place, for the purpose of entering the birth at any time following the first ten (10) days fixed by law for the registration thereof, such registration may be effected without additional requirement other than the cancellation of an internal revenue stamp for the value of one (1) dollar on the birth certificate, provided the person whose birth it is desired to register has not yet attained his fourth year; *Provided,* That in those cases where the person whose registration is requested is four or more years of age, there shall be required, in addition to the cancellation of the internal revenue stamp hereinabove mentioned, the presentation of two or more documents to establish without a doubt the date and place of birth of the person whose birth it is desired to register, and the name and birth place of the parents; *Provided, further,* That the Commissioner of Health [today Secretary of Health] is hereby authorized to prescribe and enforce such rules and regulations as he may deem necessary to compliment * the provisions hereof." (Act No. 37 of 1941, Sess. Laws, p. 132.)

Nevertheless, two years later (Act No. 117 of May 12, 1943, Sess. Laws, p. 344), said § 20 was again amended by eliminating its second paragraph and hence any relation to the problem of delayed registrations.[7] This situation was

---

[6] See Act No. 25 of April 17, 1936 (Sess. Laws, p. 212) and Act No. 112 of May 6, 1941 (Sess. Laws, p. 792).

* So in original. Probably should read "complement."

[7] Inexplicably, the trial judge as well as the attorneys in the case, applied to the facts herein the version of § 20 approved by the Legislative Assembly in 1941, without being conscious of the radical change made in 1943.

confirmed by Act No. 26 of April 8, 1949 (Sess. Laws, p. 80), also amending § 20. Subsequently, there have been no changes in said section nor in the pertinent provisions of the aforementioned §§ 38 and 42.[8]

Summing up, the legislation in force (24 L.P.R.A. §§ 1041–1302) requires certain persons to make the declaration of birth ten days after it has occurred and later provides ( § 42) that "at any time" following those ten days a registration "may be effected" without further sanction and upon the cancellation of a one-dollar internal revenue stamp. It adds ( § 38) that when the Secretary of Health or his representatives determine that a birth has not been registered within the legal period, they shall require the "person responsible" to present a certificate to the registry ". . . *in a form as complete as possible according to the time which may have elapsed since said birth occurred.* There shall be filed with said certificate *all such affidavits and other documents* as the Commissioner of Health [today Secretary of Health] shall deem necessary. . . ." (Italics ours.)

On March 15, 1944 the Department of Health sent the Revised Circular No. 3 on Delayed Birth Registrations to the registrars of vital statistics.[9] This circular describes two types of registrations: the ones called "Delayed Birth Registrations," referring to persons born after July 22, 1931 (date on which the present Vital Statistics Registry Act went into effect) and those called "Special Delayed Birth Registrations," which concern persons born prior to that date. The registrars are instructed that as to the former they shall require

---

[8] Act No. 188 of May 2, 1951 (Sess. Laws, p. 470) again amended § 38 and Act No. 58 of June 11, 1954 (Sess. Laws, p. 316) amended § 42, but they did not alter the provisions applicable to the case at bar.

[9] We disregard the fact that this circular is signed by the head of a bureau and sanctioned by a department head, but without showing the approval of the Secretary of Health. Considering that appellant did not present evidence to the contrary, we presume that the regular procedure has been followed and that said circular has the Secretary's approval. *Cf. Quiñones* v. *Galeno,* 53 P.R.R. 343, 348 (1938).

"Only . . . the Affidavit Form US No. 7-B" of the Department, while for the latter they shall require "at least one" of the following documents:

1—*Hospital Record*

A certified copy of the hospital birth record.

2—*Medical Record*

A certified copy of the record or official documents of the physician who attended at childbirth.

3—*Church Certificates*

Baptism certificate, Certificate of Confirmation, or any other church document duly certified by the Priest or Pastor thereof.

4—*School Documents*

Certified copy of the original school documents showing applicant's age, date, and place of birth, and father's name as was indicated at the time of his admission to such school.

5—*Insurance Policy*

Certificate of an insurance company showing that applicant has or had a policy in said company. The date and place of his birth must appear in said certificate as well as the name of his parents as it appeared in the application presented for such policy.

6—*Military Documents*

Registration card of the required military service in the armed forces of the United States of America.

7—*Marriage Certificate*

Certified copy of the affidavit presented by applicant at the time of his marriage.

8—*Birth Certificate*

If the applicant is the father of a family, he shall present certified copy of the birth certificate of the child or children he has had.

On July 6, 1944 the Department promulgated certain "Instructions to the Registrars of Vital Statistics on the Interpretation of Circular Number Three of March 15, 1944." They contain the following:

"In making use of the powers granted by law to the Secretary of Health to request 'all such affidavits and other docu-

ments as he shall deem necessary' in birth registrations, the authenticity and legality of the registrations of those persons of legal age, who for some reason or other were not registered in due time, shall be established according to prior law. The interest of this office is to facilitate as far as possible the delayed birth registrations or special delayed birth registrations, provided all the established requirements are observed, by proving thoroughly that the person whose birth it is sought to be registered was born in the place and on the date indicated on the application for registration."

The documents required for "special" registrations are again enumerated with a fuller description and adding that in the cases of church certificates and insurance policies, the act must have taken place at least one year before submitting the application for registration.

The Instructions further say:

"Other kinds of papers, as for example, copy of the application to obtain a driver's license, certificates of the position or job held, or documents of commercial or professional organizations of which the applicant is or was a member, etc., may be presented in evidence for the delayed birth registration. The acceptance of these documents shall depend on their date of origin, which must be *one year or more* prior to the date of application for birth registration, and they must show the date and place of birth. Since in a majority of cases this documentary evidence on which the delayed registration is made to depend shall not represent incontrovertible evidence, it shall be carefully examined and submitted to the consideration of this Bureau before its acceptance by the registrar." (Italics in the original.)

As may be seen, the administrative interpretation of § 38 sanctions the absolute necessity of specific documentary evidence, no matter how weak, in order to register belatedly a birth which occurred before July 22, 1931. We consider, for the reasons that we shall set forth below, that that is an erroneous interpretation and that the law and the legislative policy embodied therein authorize the Secretary of Health to register the said births when the evidence submitted to him—

regardless of its nature—authentically shows that the person mentioned in the petition was born in the place and on the date specified.

Our recital of the civil registry laws shows that from 1912 to 1931, delayed birth registrations were authorized with no other requirement than the presentation of the proper petition, although a small fine was imposed on the person responsible for the delay. In 1931 a year of grace was granted for such registrations, thereby eliminating the penalty, and it was made clear that after the expiration of said term the registration could be effected also without sanction and upon payment of a one-dollar stamp. It was provided simultaneously that in such cases the person responsible should present a certificate "in a form as complete as possible according to the term which may have elapsed since [the] birth occurred" together with "all such affidavits and other documents as the Commissioner of Health [today Secretary of Health] shall deem necessary."

This course of events shows that the legislative policy on delayed registrations has been an extremely liberal one, probably based on the criterion that the social circumstances of the past, product of the first and difficult years of development—deficient means of communication and transportation, illiteracy in a large scale, insufficient medical facilities, increase of concubinage and illegitimacy, ignorance of government mechanisms—made it extremely difficult for many persons to comply with the registration requirements. After two decades during which a mere petition was sufficient to obtain a delayed registration, the Legislature, in requiring additional evidence for the first time, proved to be conscious of the difficulties of the problem and exempted the applicants from having to submit a complete petition in all cases. The time elapsed since the birth would be the test for judging the information contained in the certificate. It seems to us that in authorizing the Secretary in that same section to require

together with the certificate "all such affidavits and other documents as [he] shall deem necessary" it was the legislative intent to impress upon the mind of the administrative officers the hardships of evidence in these cases and to require such proof as might reasonably establish the fact of birth and its essential circumstances, without the Secretary having authority to require certain documents in all cases and much less when the affidavits proved the circumstances of birth to full satisfaction. This conclusion is strengthened by the fact that the Legislature has repealed the Act which during the years 1941–43 expressly required for entering delayed birth registration of persons more than four years old to present "two or more documents to establish without a doubt the date and place of birth of the person whose birth it is desired to register and the name and birth place of the parents." [10] That repeal constitutes a reaffirmation of the legislative mandate, effective since 1931, which prescribes the use of alternate means of proof.[*]

This determination is likewise buttressed by the fact that in the judicial proceedings for the delayed registration of marriages and deaths, incorporated, as we noted previously, in the same § 38 covering births, the Legislature requires that the judicial determination be based on "authentic proof" without part of that proof necessarily and in all cases including definite documents. We see no reason whatsoever for attributing a different purpose to the phrase "affidavits and other documents."

Neither does it escape our attention that the list of documents prepared by the Department of Health included some—petitions for registration of children, of insurance policies and driver's licenses, documents of commercial or professional organizations—of very doubtful probatory ef-

---

[10] *Supra* at 12–13.

[*] See footnote (*) on p. 6

ficacy. One of them, however, would apparently suffice for the Department to enter a delayed birth registration. On the other hand, an applicant could offer to the Department affidavits describing minutely and reliably the circumstances of a birth and yet would find his wishes thwarted if he could not present one of said documents. We do not believe that this regulation totally complies with the purpose expressed in the set of Instructions to establish "the authenticity and legality of the registration of those persons of legal age, who for some reason or other were not registered in due time according to prior law."

We therefore decide that pursuant to §§ 38 and 42 of the Vital Statistics Registry Act in force, the Secretary of Health has no authority to deny a delayed birth registration for the sole reason that one of the documents required by him is not attached to the petition. The petition may be accompanied by affidavits only and if such affidavits, after being investigated by the Secretary (§ 43 of the Act), if he deems it necessary, prove authentically the existence and essential circumstances of the birth, it is the Secretary's duty to order the requested registration. Of course, if one or several of the documents enumerated in Circular No. 3 exist, the Secretary may require the applicant to submit them, or he may obtain them directly for the purpose of examining them together with the affidavits and thus comply with his duty of ascertaining whether the birth actually occurred in Puerto Rico.[11] The Secretary's refusal to register is subject to judicial review as described by us earlier in the opinion.

---

[11] By express provision of the Act (§ 38) the certificates of birth, marriage or death issued by the Secretary constitute prima facie evidence, and consequently, subject to contradiction, of the facts set forth therein. *Juan Bigas, Sucrs.* v. *Industrial Comm'n,* 71 P.R.R. 313, 319 (1950); *Mercado* v. *American Railroad Co.,* 61 P.R.R. 222, 227 (1943). This is also the principle applicable to proceedings concerning federal citizenship. See *Casares-Moreno* v. *United States,* 226 F. 2d 873 (1955); *Mah Toi* v. *Brownell,* 219 F.2d 642 (1955); *cert. den* 350 U. S. 823 (1955).

Consequently, the judgment appealed from will be reversed. Considering that defendants based their case entirely on the questions of law and for such reason they did not properly meet plaintiff's evidence, and that the trial judge, for the same reason, did not weigh the evidence appearing in the record, we believe that the case should be remanded for the introduction of additional evidence, if one of the parties should wish to present it, and for the court to make its findings of fact and conclusions of law.

The judgment of the Superior Court will be reversed and the case remanded for further proceedings compatible with this opinion.

